```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

EDMUND AWAH                    *
                               *
          v.                   *    Civil Action WMN-09-CV-1044
                               *
BOARD OF EDUCATION OF          *
BALTIMORE COUNTY               *

    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is Defendant Board of Education of Baltimore County's Motion for Summary Judgment. Paper No. 62. The motion is fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and the motion will be granted as set forth below.

**I.   BACKGROUND**

This suit arises out of Mr. Awah's claim of discriminatory discharge by Defendant Board of Education of Baltimore County on the basis of race and national origin. The Board hired Mr. Awah as a teacher for Landsdowne High School, effective August 22, 2005. Mr. Awah signed a resignation form on April 21, 2006. Mr. Awah alleges that his resignation was the product of intolerable working conditions stemming from discriminatory treatment by the principal, the head of his department, and other staff members of the school.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. Unsupported speculation is insufficient to defeat a motion for summary judgment. Felty, 818 F.2d at 1128 (citing Ash v. United Parcel

Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." Id.

## III. DISCUSSION

Under Title VII it is an unlawful employment practice for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Discrimination claims may be established through two alternative methods of proof: 1) through a "mixed-motive" framework, requiring direct or circumstantial evidence that the employee's age or race was a motivating factor in the decision to terminate the employee, although it need not be the only factor; or 2) a "burden-shifting" framework, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny, "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004). Here plaintiff has presented no direct or mixed-

motive evidence of discrimination. Therefore, Plaintiff must indirectly establish his discrimination claim and show that the nondiscriminatory reason for the termination was actually a pretext for discrimination.

**A.    PRIMA FACIE CASE OF DISCRIMINATORY DISCHARGE**

Under the "burden shifting" framework, the employee must first establish a prima facie case of discrimination. Hill, 354 F.3d at 285 (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. 411 U.S. at 807). A prima facie case of discrimination requires Plaintiff to present sufficient evidence to prove that: (1) he is a member of a protected group; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations;[1] and (4) after his termination, the job remained open or he was replaced by someone similarly qualified who is not a member of his protected group. See Hill, 354 F.3d at 285 (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)). Once Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to "articulate a legitimate,

---

[1] Plaintiff asserts a different third element: "he was qualified for the position" and cites to a Sixth Circuit case, Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). The controlling precedent here, however, is from the Fourth Circuit and Plaintiff's iteration of the elements to establish a prima facie case is incorrect in this Circuit.

nondiscriminatory reason for the [termination]." Id. If the employer is able to meet its burden, the burden shifts back to the plaintiff to demonstrate that the reason offered by the employer is false or pretextual and that the real reason for the action was unlawful discrimination. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Throughout this burden shifting, "the [u]ltimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains . . . with the plaintiff." Burdine, 450 U.S. at 253.

Mr. Awah is unable to establish a prima facie case of discrimination. Defendant does not dispute the first or fourth elements: Mr. Awah is black and originally from Ghana and was replaced by someone similarly qualified who is not a member of his protected group. Defendant's arguments focus on the second and third elements.

**1. JOB PERFORMANCE**

Mr. Awah provides no evidence that he was meeting Defendant's legitimate expectations of his job performance. In contrast, the school produced numerous detailed evaluations of Mr. Awah's teaching demonstrating that his performance was unsatisfactory. In addition to specific criticism of Mr. Awah's performance in class following each observation, several criticisms of Mr. Awah's performance appeared repeatedly

throughout: Mr. Awah failed to follow the "5E" approach to instruction endorsed by the BCPS science curriculum, failed to adequately prepare lesson plans, and failed to appropriately manage his class and engage the students. In addition, Defendant attached several e-mails directed to Mr. Awah regarding missed appointments with his designated mentor and his failure to present four detailed lesson plans each week. The e-mails also discussed complaints from students regarding his teaching and behavior in class, including talking on his cell phone during class and his failure to provide lesson materials for substitute teachers when he was absent from class. Throughout the evaluations and e-mails the principal and science department head as well as others working with Mr. Awah expressed a desire to help him succeed. They explained that Mr. Awah took constructive criticism well, but that there was no evidence of his applying the lessons to improve his teaching.

Mr. Awah's response to this evidence is to argue that the evaluations and planning sessions were ruses to prove that he was a bad teacher so they could terminate him, but that he otherwise would have received satisfactory evaluations. He attempts to demonstrate that the poor evaluations were false by 1) blaming his poor evaluations on the school's failure to provide him with an LCD projector; 2) questioning how he could have received poor evaluations despite having stellar

6

credentials and a satisfactory review while teaching summer school in Fairfax, Virginia; and 3) questioning why he continued to get failing grades on his job evaluations even after he attended sessions intended to help him with lesson plans, "has it got so bad that Plaintiff cannot follow simple procedures and methodologies from the "assistance plan" session to improve his classroom performance?" Opp'n, Exh. 20. Notably absent from Mr. Awah's arguments, however, is objective evidence that Plaintiff was meeting the legitimate expectations of his employer. A plaintiff's conclusory assertions as to his performance and unsubstantiated allegations fail to establish that he was performing the job at a level that met his employer's legitimate expectations and are not enough to withstand summary judgment. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). The likely reason Plaintiff cannot provide objective evidence that he was meeting his employer's expectations lies in the words of Mr. Awah himself, which indicates that he did not agree with the teaching methodology set out by the School Board. In discussing the mentoring meetings he characterized them as "meaningless unstructured discussions which sought to retrieve information on my teaching progress/difficulties and lethargic analysis of irrelevant theories underpinning the teaching/learning process." Id. He continues by stating that in order to achieve the "higher order"

7

thinking demanded in his evaluations "there was a need for a paradigm shift from a core component of the teaching strategies, which I will characterize as 'the July 4th syndrome' – an over dramatization of the explosive effects of some chemical reactions, intended to capture the fascination of students – to an outcome based groundings of encounters that promotes a discriminatory appreciation of scientific phenomenon and problem solving at a higher level of abstraction.  In this regard the listening skills of students needs (sic) to be improved."  Id.

   Plaintiff may be right in his criticisms of what Defendant expected of Plaintiff's lessons, but that does not change that Mr. Awah was not meeting Defendant's expectations of his teaching.  While Plaintiff's teaching methodologies may have met the expectations of other employers, he has not demonstrated that he met Defendant's expectations, which is what he must show to establish a prima facie case.  See King, 328 F.3d at 150 (finding that the plaintiff's and co-teachers' testimony that teacher was meeting employer's expectations was insufficient to establish that teacher was meeting employer's expectations as it did not address what the employer's expectations were nor analyze whether he met them).  As Plaintiff has failed to provide sufficient evidence to demonstrate that he met Defendant's legitimate expectations, he has not established a prima facie case and his claim cannot survive summary judgment.

## 2. CONSTRUCTIVE DISCHARGE

Plaintiff's claim also fails because he has not provided evidence that he was discharged. Although Mr. Awah resigned from his position, he alleges that he did so due to intolerable working conditions, and that Defendant, in essence, constructively discharged him.[2] To state a claim for constructive discharge, Mr. Awah must show 1) that Defendant acted deliberately and was motivated by racial bias, and 2) that the working conditions were objectively intolerable. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 273 (4th Cir. 2001)).

Defendant has failed to provide sufficient evidence that his working conditions were objectively intolerable. "Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (citing

---

[2] In his opposition, Mr. Awah alleges, for the first time, that the principal, assistant principal and Mr. Burgess, the head of the science department, threatened that if he didn't resign that he would be terminated. As a result he claims that he signed the resignation form. This allegation does not appear in Mr. Awah's sworn statement nor did it appear in his initial or Amended Complaint. An opposing party may not rely merely on allegations in its own pleading, but must provide admissible evidence demonstrating those facts. See Fed. R. Civ. P. 56(e)(2); Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996). Thus, Mr. Awah's new allegation will not be considered on this motion for summary judgment.

Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004).

As explained by the Fourth Circuit:

> An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

Honor, 383 F.3d at 187 n.2 (citing Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1072 (4th Cir. 1993)).

Mr. Awah's only evidence of intolerable working conditions is found in a sworn statement attached to his opposition memorandum. Mr. Awah begins by detailing the events that he claims show that he was being racially and ethnically harassed. Opp'n, Ex. 20 at 1-2. For several days shortly after Mr. Awah began teaching at Landsdowne, he alleges another staff person displayed an orangutan on her computer screen within view of his classroom. Id. at 1. On another, he was asked to substitute teach in a class in which he had to distribute pamphlets with an African gorilla on the cover. Id. And in a similarly related event, he alleges that a fellow teacher while complaining about the students' lack of understanding of the simple things he was

teaching stated that "even monkeys will easily understand these things."  Id. at 2.  He also alleged that a substitute named John told him a story about the history of Baltimore that involved blaming the arrival of blacks in the city for the crime and problems of the city.  Id.  Finally, Mr. Burgess, the head of the science department, allegedly sent an e-mail with "subtle insinuations" that the victims of Katrina were ignorant.  Id.  Mr. Awah's interpretation of these events as demonstrating racial animosity and harassment is highly subjective as each event in itself is completely neutral.  Moreover, it is questionable whether the acts and statements were even directed at Plaintiff.  At most they suggest some insensitivity on the part of several staff members at Landsdowne High School.

Mr. Awah also alleges two statements by Mr. Burgess demonstrate racial and ethnic harassment.  Mr. Awah first arrived at the school, he alleges that Mr. Burgess warned him that because he was "black, old, and speaks with an accent" that students might confront him in the hallway and yell 'get out of my way.'"  Id. at 1.  On a second occasion while discussing an upcoming conference with parents, Mr. Burgess allegedly cautioned Mr. Awah that the parents might not take him seriously because of his accent and that he should call him for assistance if the parents were uncooperative.  Id. at 2.  While Mr. Burgess's statements were possibly inartfully stated, Mr. Awah's

11

interpretation is highly subjective as the intent of the statements appear to be offers of support rather than harassment. Mr. Awah provides no objective evidence that this is not the case. This conclusion is buttressed by the numerous statements in Mr. Awah's evaluations and e-mails where Mr. Burgess expresses his desire to assist Mr. Awah to be the successful teacher that Mr. Burgess believes he can be.

Mr. Awah then provides a catalogue of incidents that he considered harassing: staff allegedly spying on his classes, a staff member passing through his classroom to get to her office during one of his classes, Mr. Burgess scheduling a parent teacher conference during his lunch break, being reprimanded and instructed in front of students and other teachers causing him humiliation, a failure to provide Mr. Awah with an LCD projector when other new teachers received them, and a decision to hire an AP chemistry teacher when Mr. Awah is qualified to teach AP classes. Mr. Awah also contends that his unsatisfactory performance evaluations were unfair and done solely with the intent to set him up to terminate him. Mr. Awah's sworn statement that his evaluations were unfair and incorrect, absent objective corroboration cannot defeat summary judgment, however. See Williams, 370 F.3d at 433. Moreover, while Mr. Awah may have felt that he was being unfairly criticized and that his working conditions were difficult, none of his accusations, not

even when taken in total, rise to the level of intolerable working conditions. See Williams, 370 F.3d at 434 (4th Cir. 2004) (affirming dismissal of plaintiff's claim for constructive discharge because allegations that the plaintiff's "supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did "not establish the objectively intolerable working conditions necessary to prove a constructive discharge"); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004) ("[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.") (internal citations omitted). Cf. Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1130, 1132 (4th Cir. 1995) (issue of fact as to intolerability of work conditions where supervisor and others subjected employee to daily epithets about his Iranian origin, calling him such names as "the local terrorist," a "camel jockey," and "the emir of Waldorf", and tried to embarrass him in public, resulting in an ulcer and his eventual resignation).

Even if the facts alleged by Mr. Awah were sufficient to support a finding of intolerable working conditions, he has not provided sufficient evidence to demonstrate that Defendant's

acts were deliberately intended to force Mr. Awah to quit. "An employer's actions are deliberate only if they 'were intended by the employer as an effort to force the plaintiff to quit.'" Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quoting Matvia, 259 F.3d at 272). Mr. Awah provides not a scintilla of evidence to demonstrate that all of the above actions were done with the intent to force him to resign. His sole allegation of discrimination is that the school deprived him of the use of an LCD projector, to which he claims every other new teacher in the science department (who were all white) had access, and that he received bad performance evaluations while they all received good ones. Although Mr. Awah has provided no evidence to support either of these contentions beyond his own statements, even if these allegation are true, there is nothing about them that demonstrates an intent to force Mr. Awah to resign. Thus, Mr. Awah has failed to provide sufficient evidence to establish that his resignation was, in essence, a constructive discharge, and, consequently, he cannot establish a prima facie case of discrimination. For this reason as well, his claim cannot survive summary judgment.

**B. Legitimate, Nondiscriminatory Reason For Termination and Pretext**

Assuming arguendo that Mr. Awah had established a prima facie case, Defendant provided a legitimate, nondiscriminatory

14

reason for his termination, his poor performance.  Mr. Awah, however, has failed to provide evidence demonstrating that the reason provided by Defendant was pretextual.  As already discussed, other than Mr. Awah's objections to his performance evaluations, he provides no objective evidence to support his contentions that they were unfair or inaccurate in light of the schools well articulated expectations of his performance.  Not once does Mr. Awah state that he tried to incorporate the suggested changes into his lesson planning.  Although Mr. Awah contends that he "continuously provided lesson plans," he never contends that he met the four lesson plans per week as required nor does he provide any objective evidence, such as an example of a lesson plan, supporting his allegation.  He also, without addressing the evidence that he failed to attend his mentoring meetings, accuses Mr. Burgess and his mentor, of not showing up at his meetings, but then alleges that the meetings they had were made with the "sole aim of proving just one thing: Mr. Awah is a 'bad teacher.'"  Opp'n, Ex. 20, 11.  As discussed above, Mr. Awah's own words demonstrate his contempt for the demands Defendant was making on him.  Combined with his lack of objective evidence that Plaintiff's evaluations were incorrect, Plaintiff has failed to provide sufficient evidence to overcome summary judgment that Defendant's legitimate reason for his discharge was contextual.

**IV. Conclusion**

For the foregoing reasons, the Defendant's motion for summary judgment will be granted. A separate order will issue.

```
                        _____/s/_____
                        William M. Nickerson
                        Senior United States District Judge
```

DATED: July 27, 2010